James D. GRIMMINGER, Appellant,

v.

Shuba MAITRA, M.D., and Blair Surgical Associates, PC, Appellees.

Superior Court of Pennsylvania.

Submitted Aug. 8, 2005.

Filed Nov. 4, 2005.

Stephen D. Wicks, Altoona, for appellant.

Andrew L. Horvath, Jr., Johnstown, for appellees.

Before: ORIE MELVIN, LALLY–GREEN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 James D. Grimminger appeals the trial court order granting summary judgment in favor of Shuba Maitra, M.D. ("Dr. Maitra") and Blair Surgical Associates, PC ("Blair Surgical"). Grimminger claims Dr. Maitra violated the physician-patient privilege by offering information and opinions to Grimminger's employer, the U.S. Postal Service. Grimminger contends that the trial court erred in concluding that (1) Dr. Maitra did not release any confidential communications or other diagnosis infor-

mation to the postal authority, (2) Grimminger gave Dr. Maitra implied consent to discuss his medical problems with his employer, and (3) a trend has developed in Pennsylvania jurisprudence which permits a physician to communicate with a patient's employer concerning the patient's ability to work without first gaining authorization from the patient. After a review of these claims, we find the trial court did not err in its result and therefore affirm the order.

¶ 2 Grimminger was referred to Dr. Maitra, a board certified physician in general and vascular surgery, by the Veteran's Administration on February 5, 1997, to receive a diagnosis for complaints regarding heaviness, numbness, and pain in his left arm, particularly when raising the arm. Dr. Maitra diagnosed Grimminger with a subclavian vein thrombosis which causes an occlusion in the vein and subsequent pain and swelling. Grimminger again visited Dr. Maitra on July 23, 2000, with similar complaints. As a result of this second visit and knowing Grimminger's work was of a physical nature, Dr. Maitra wrote a letter dated August 22, 2000, addressed to "To Whom It May Concern", stating his recommendation that Grimminger refrain from any strenuous activity with his left arm. At the end of this letter, Dr. Maitra stated, "If you require additional information in regards to this patient, please do not hesitate to contact this office." Thereafter, Grimminger's employer, the postal service, requested a completed work restriction evaluation form. Grimminger scheduled an appointment with Dr. Maitra for October 4, 2000, to review this form. Dr. Maitra completed this form by specifying that Grimminger was to restrict his lifting to five pounds with his left hand because lifting contributed to the chronic pain syndrome. This was Grimminger's last visit with Dr. Maitra.

¶ 3 On February 4, 2002, postal inspectors came to Dr. Maitra's office to question him about Grimminger's work limitations. Dr. Maitra agreed to review a surveillance film of Grimminger to determine whether he was acting outside the work restrictions that Dr. Maitra had established two years before. Dr. Maitra answered specific questions put forth by the postal inspectors about Grimminger's limitations based upon the October 4, 2000 work restriction form. Dr. Maitra said he agreed to give his opinion without Grimminger's authorization because he had previously been asked to provide information to the post office. Thereafter, the postal inspector issued a report on Grimminger that summarized his work limitations and Dr. Maitra's new opinions. On March 7, 2002, the Postal Service issued a termination notice to Grimminger based on the report. Grimminger appealed the termination to the Merit System Protection Board and was reinstated in August 2002.

¶ 4 On May 14, 2003, Grimminger filed a Complaint alleging a breach of confidential relationship, breach of contract, and slander against Dr. Maitra and Blair Surgical. Dr. Maitra and Blair Surgical filed a Motion for Summary Judgment. Grimminger followed by filing a Motion for Partial Summary Judgment. On March 9, 2005, the trial court granted Dr. Maitra and Blair Surgical's Motion for Summary Judgment and denied Grimminger's Motion for Partial Summary Judgment.

¶ 5 Grimminger now appeals, raising the following question for our review:

WHETHER DR. MAITRA BREACHED GRIMMINGER'S CONFIDENTIALITY BY OFFERING INFORMATION AND OPINIONS TO GRIMMINGER'S EMPLOYER WITHOUT HIS KNOWLEDGE OR

CONSENT THAT CAUSED HIM TO BE FIRED?

Brief for Appellant at 4.

Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1258–59 (Pa.Super.2003) (internal citations and quotation marks omitted).

■ ¶ 6 Grimminger contends that Dr. Maitra breached the physician-patient privilege when Dr. Maitra offered confidential information, including his opinion and other statements, to the postal inspectors regarding the work restrictions put into place on October 4, 2000. Brief for Appellant at 10. Pennsylvania recognizes a civil cause of action for breach of the physician-patient privilege where "confidential disclosures occurred that were unrelated to any judicial proceedings." *Haddad v. Gopal*, 787 A.2d 975, 981 (Pa.Super.2001); *see also Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950, 953 n. 4 (1988) (*en banc*) (noting that a majority of jurisdictions recognize a cause of action for breach of the physician-patient privilege where extra-judicial disclo-sures of confidential information have been made). The Pennsylvania physician-patient privilege statute states that:

[n]o physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, *which shall tend to blacken the character of the patient,* without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

42 Pa.C.S. § 5929 (emphasis added). The statute provides that the privilege is lost when a party institutes a civil matter on account of personal injuries. *See Moses,* 549 A.2d at 955. A patient's "consent also serves as an affirmative defense to an action for breach of physician-patient confidentiality." *Haddad,* 787 A.2d at 981.

■ ¶ 7 Regarding the statute, "our case law has drawn a distinction between information learned by a physician through communication to him by a patient and information acquired through examination and observation." *In Re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 76–77 (1980). The distinction originates in the rationale of the statute which was "designed to create a confidential atmosphere in which a patient will feel free to disclose all possible information which may be useful in rendering appropriate treatment." *Miller Oral Surgery, Inc. v. Dinello,* 416 Pa.Super. 310, 611 A.2d 232, 235 (1992). Therefore, "the privilege is limited to information which would offend the rationale of the privilege." *In Re June 1979 Allegheny County Investigating Grand Jury,* 415 A.2d at 77. Hence, a doctor must not expose a patient's communications if doing so would release confidential information which was acquired in attending to and

treating the patient and which would blacken the character of the patient. *See* 42 Pa.C.S. § 5929; *see also In Re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 at 77 (concluding that the privilege is limited to "information directly related to the patient's communication and thus tending to expose it."); *see generally Commonwealth v. Carter,* 821 A.2d 601, 608 (Pa.Super.2003) ("The [psychiatrist-patient] privilege is not designed to specifically protect the psychotherapist's own opinion, observations, [or] diagnosis.")

¶ 8 Here, the communications Grimminger puts forth to support his contention do not trigger the physician-patient privilege. Grimminger attempts to expand the scope of the physician-patient privilege set forth in *Haddad* to support his claim. *Haddad* involved a patient who alleged a claim for breach of the physician-patient confidentiality stating that her physician told her husband that she had a sexually transmitted disease. 787 A.2d at 978. This Court found an actionable breach of physician-patient confidentiality and stated "[d]octors have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential." *Id.* at 981. However, in stating this standard, the Court emphasized the fact that a sexually transmitted disease was at issue. *See id.* Our courts have recognized sexually transmitted diseases to be loathsome diseases which blacken one's character. *See Agriss v. Roadway Exp., Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 470 (1984); *see also Evans v. Workmen's Compensation Appeal Board (Julia Ribaudo Home),* 151 Pa.Cmwlth.490, 617 A.2d 826, 828 (1992) ("Blackening of the character results from testimony concerning a loathsome disease."). Therefore, the *Haddad* standard, to which Grimminger cites, must be limited to the context of the privilege statute which protects against the disclosure of information directly related to a patient's confidential information that blackens their reputation.

■ ¶ 9 Grimminger cites to three statements made by Dr. Maitra to the postal inspectors to prove a breach of the physician-patient privilege. First, Grimminger claims Dr. Maitra's statement to the postal inspectors that Grimminger told Dr. Maitra that he could not do the activities shown in the video is a violation of the privilege because it required disclosure of a communication between a patient and a physician. Brief for Appellant at 12. Grimminger bases this claim on the postal inspector's report, which states the following: "Dr. Maitra stated Mr. Grimminger told him that he could not do things with his left arm that he was clearly performing on the video, such as grasping and continuous extension [of] his left arm." Postal Inspection Service Investigative Memorandum, 2/7/03, at 6. Even assuming the postal report stated Dr. Maitra's words correctly, Grimminger fails to prove that this statement disclosed confidential information which would blacken his character. In fact, Grimminger merely asserts that this statement would violate the *Haddad* standard. Grimminger offers no other proof nor does he address the fact that the postal inspectors were already aware of the limitations from the work restriction form of October 4, 2000. Since Grimminger did not demonstrate that this statement actually disclosed confidential information which blackened his character, he has failed to establish that a genuine issue of material fact exists. Therefore, this claim has no merit.

■ ¶ 10 Second, Grimminger contends Dr. Maitra made a new and diagnostic statement when he told the postal inspectors that it appeared Grimminger had "recovered" from his condition. Brief for

Appellant at 12. Grimminger's sole basis to prove this claim is Dr. Maitra's summarized comments in the postal inspector's report. Grimminger cites to the *Haddad* Court's interpretation of the privilege statute to support the proposition that this new diagnosis is protected by the privilege. The *Haddad* Court stated "[d]octors have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential." 787 A.2d at 981. *Haddad* involved a doctor who released a diagnosis related to a sexually transmitted disease to a third party. *See id.* at 978. We interpret *Haddad* to limit the types of diagnoses protected by the privilege statute to those that expose confidential information to third parties and which blacken a patient's character. Here, Grimminger fails to prove that Dr. Maitra's comment was a diagnosis which rises to the level of an exposure which would blacken his character as in *Haddad.* The cornerstone of the physician-patient privilege is to protect a patient from having his or her doctor expose confidential communications which would blacken his character, *see Jones v. Faust,* 852 A.2d 1201, 1205 (Pa.Super.2004), not to prohibit a doctor's right to make comments based upon already known work limitations. Grimminger has not raised a genuine issue of material fact here because he fails to establish that Dr. Maitra exposed confidential information which would blacken his reputation. Therefore, this claim has no merit.

¶ 11 Third, Grimminger claims Dr. Maitra told the postal inspectors that there were no objective findings to support Grimminger's complaints of pain and therefore he had to determine the restrictions based on Grimminger's subjective complaints. Brief for Appellant at 12. Grimminger contends this statement to the postal inspectors questions his truthfulness regarding the limitations. Brief for Appel-

lant at 12. Simply claiming that Dr. Maitra questioned his truthfulness is not enough to demonstrate that a genuine issue of material fact exists. *See Evans,* 617 A.2d at 829 (concluding that physician did not violate privilege where physician did not refer to a loathsome disease or claimant communications but rather merely stated his medical opinion of claimant's reactions to the tests he administered). Grimminger must establish that Dr. Maitra exposed his confidential communications and as such blackened his character. *See* 42 Pa.C.S. § 5929. Given that Grimminger has failed to establish that Dr. Maitra exposed a confidential communication which blackened his character, he has not raised a genuine issue of material fact. Therefore, his contention has no merit. For the foregoing reasons, Grimminger has not stated a cause of action that Dr. Maitra violated the physician-patient privilege as to any of these statements.

¶ 12 Grimminger also contends that the trial court erred in concluding he impliedly consented to Dr. Maitra's release of such information to the postal inspectors. Brief for Appellant at 10. Pennsylvania recognizes that "one can impliedly consent to disclosure of confidential medical information. It is [the] physician's duty to obtain either express or implied consent prior to releasing confidential information to third parties." *Haddad,* 787 A.2d at 981. The facts presented here establish that Dr. Maitra did not release any confidential communications. As such, we do not need to determine whether Grimminger gave his implied consent to release the communications. Since Grimminger has not demonstrated Dr. Maitra exposed any confidential communications to the postal inspectors, we do not reach this issue.

¶ 13 Grimminger's final contention is that the trial court erred when it found his consent was not necessary because of a

growing trend in Pennsylvania that allows employers to request information from physicians without authorization. Brief for Appellant at 10. The trial court used the reasoning that as plaintiffs have a lower expectation of privacy when putting their medical conditions at issue in personal injury claims so to do workers who put their medical conditions at issue in the workplace. Trial Court Opinion, 3/9/05, at 8, n. 2. In essence, the trial court stated that a trend exists where a worker who puts his injury at issue fits within the privilege statute exception which states a person who institutes a civil matter for damages on account of personal injuries loses the privilege. Grimminger puts forth a host of arguments to demonstrate that no such trend exists in Pennsylvania. However, having determined Dr. Maitra did not expose any of Grimminger's confidential communications which blackened his character, we need not decide whether this exception to the privilege applies to the circumstances of this case.

¶ 14 For the foregoing reasons, we affirm the trial court's order.

¶ 15 Order AFFIRMED.