**Robert SOUDER, Appellant,**

v.

**RITE AID CORPORATION, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 14, 2006.

Filed Oct. 13, 2006.

Reargument Denied Dec. 20, 2006.

Thomas L. Wenger, Harrisburg, for appellant.

William A. Slaughter and Joshua A. Mooney, Philadelphia, for appellee.

BEFORE: BENDER, BOWES and PANELLA, JJ.

OPINION BY BOWES, J.:

¶ 1 Robert Souder appeals the July 14, 2005 order granting summary judgment to Rite Aid Corporation in this action seeking indemnification for legal fees under Delaware law. We affirm.

¶ 2 On January 11, 2005, Appellant instituted this action in the Court of Common Pleas of Cumberland County against Appellee, a Delaware corporation, seeking advancement of attorney's fees and legal costs that have been and will be incurred by him in an action currently pending against Appellant by Appellee. That action also was instituted in the Court of Common Pleas of Cumberland County, and we will refer to it as the underlying action. Appellee filed an answer and new matter herein on January 31, 2005, and on March 3, 2005, Appellant filed a motion for summary judgment. A cross-motion for summary judgment filed by Appellee was granted on July 14, 2005. This timely appeal followed.

¶ 3 We first outline our standard of review:

Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Grimminger v. Maitra*, 2005 PA Super 374, ¶ 5, 887 A.2d 276 (quoting *Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1258–59 (Pa.Super.2003)).

¶ 4 Appellant maintains that he, rather than Appellee, should have been granted summary judgment in this action. Appellant premises his claim to advancement of attorney's fees and legal costs in the underlying action on language contained in Appellee's certificate of incorporation in accordance with the dictates of Delaware law.

¶ 5 Before we can determine whether Appellant is entitled to advancement of attorney's fees and legal costs, we must examine the allegations in the underlying action. In that case, Appellee alleged that Appellant received money from Appellee under both an executive incentive plan and a backdated severance agreement, and that Appellant was not entitled to that money. Appellant was an employee of Appellee for many years and retired in 2000, when he was a senior vice-president for human resources. In October 1999, Appellee's Chairman and Chief Executive Officer, Martin L. Grass, and its former Chief Financial Officer, Franklyn M. Bergonzi, were dismissed by Appellee's Board of Directors (the "Board") after the Board

discovered that Grass and Bergonzi prepared and filed financial statements with the Securities and Exchange Commission that falsely inflated Appellee's reported earnings by approximately $500 million in each of the previous three years. Grass and Bergonzi subsequently were indicted and pled guilty to criminal conspiracy to defraud Appellee, its shareholders, investors, the Board, and vendors.

¶ 6 The conspiracy not only involved overstated reported earnings, it also involved the payment of substantial sums of money to select executives under a long-term incentive plan, known as the LTIP I, even though the requirements for a payout under the LTIP I, as established by the Board, had not been satisfied. Grass and Bergonzi also fraudulently created back-dated employment agreements in favor of certain executives, and those agreements purportedly obligated Appellee to pay substantial amounts of money to those employees upon termination of their employment. Appellant was among the executives who received improper payments both under the LTIP I and pursuant to a back-dated employment agreement.

¶ 7 The LTIP I operated in the following manner. In March 1995, at Grass's instigation, the Board adopted a long-term incentive plan, the LTIP I. Under the LTIP I, certain executives were entitled to receive Appellee's stock or the dollar equivalent of stock if Appellee's earnings per share grew at specified rates over the ensuing four years. Payment was authorized only if Appellee's earnings per share grew at a minimum rate of eight percent per year. The measurement period under the plan started in March 1995 and ended in March 1999, coextensive with Appellee's 1995 through 1999 fiscal years. Grass and Bergonzi caused Appellee to make payments to Appellant under the LTIP I by falsely reporting to the Board that the minimum earnings per share growth target required for payment under the LTIP I had been met. In July 1999, Appellant received a substantial payment from Appellee that he was not entitled to receive under the LTIP I, and he has refused to return the money.

¶ 8 Appellant also wrongfully received payments under a back-dated severance agreement created by Grass when Grass no longer had authority to act on behalf of Appellee. In late 1999 or early 2000, after he already had been dismissed by Appellee, Grass fraudulently created and delivered letters to several executives, including Appellant, purporting to oblige Appellee to pay those executives substantial sums upon termination of employment. The letter was falsely dated June 12, 1998, and fraudulently purported to be executed by Grass in his capacity as Appellee's Chief Executive Officer.

¶ 9 The letter to Appellant materially increased severance benefits both in amount and in duration that Appellant was entitled to receive from a deferred compensation agreement. Appellant, knowing that the letter was back-dated and was created when Grass no longer was authorized to act on behalf of Appellee, presented the letter to the new management of Appellee and demanded that they comply with its terms. Unaware of the deception, Appellee honored the terms of the back-dated letter. Appellee subsequently discovered the deception. In the underlying action, Appellee sought recovery of compensation wrongfully paid to Appellee under the LTIP I as well as under the severance agreement.

¶ 10 Appellant seeks legal fees and costs in the underlying action based upon the following language in subsection (B)(1) of the tenth article in Appellee's certificate of incorporation, which was contained in the bylaws as required by 8 Del.Code § 145:

(1) **Right to Indemnification.** Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she or a person of whom he or she is the legal representative is or was a director or officer of the corporation or is or was serving at the request of the corporation as a director or officer of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director or officer or in any other capacity while serving as a director or officer shall be indemnified and held harmless by the corporation to the fullest extent authorized by the General Corporation Law as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said law permitted the corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise tax or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executers and administrators; provided, however, that except as provided in paragraph (2) of this Section B with respect to proceedings seeking to enforce rights to indemnification, the corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the corporation. The right to indemnification conferred in this Section B shall be a contract right and shall include the right to be paid by the corporation the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that if the General Corporation Law required, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which services was or is rendered by such person while a director or officer, including, without limitation, service to any employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the corporation of any undertaking by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section B or otherwise.

■ ¶ 11 In accordance with this language and as mandated by Delaware Law, Appellant is to be advanced attorney's fees and costs in actions only when the action is brought "by reason of the fact" that he was an officer of Appellee. In the underlying action, Appellee contends that Appellant was not entitled to receive the compensation that was due to the fraudulent financial records created by Bergonzi and Grass. There is no allegation that Appellant performed any executive level function. After Grass and Bergonzi falsified financial documents, Appellant merely received compensation under the terms of the LTIP I. Appellant's only affirmative act was to submit the backdated severance letter to Appellee's management.

¶ 12 We begin our discussion with an examination of the Delaware Supreme Court's decision in *Stifel Financial Corp. v. Cochran*, 809 A.2d 555 (Del.Sup.2002), because it also involved a claim by a corporation that a former officer and director had received improper compensation. In *Stifel,* Cochran was a former corporate officer and director of Stifel Financial Corporation. Cochran sought indemnification for legal costs incurred in two underlying actions. The underlying action that is relevant to our disposition herein involved an arbitration action that had been brought by Stifel against Cochran. In that underlying action, as in the underlying action before us, Stifel sought repayment of excess compensation paid to Cochran and also sought repayment of a loan that Stifel had made to Cochran. The corporation's bylaws, as the ones at issue herein, indemnified any officer for any action brought "by reason of the fact" that the employee was an officer or employee of the corporation.

¶ 13 The chancellor ruled that Cochran was not entitled to indemnification for the action that had been brought by Stifel seeking repayment of the compensation and loan, and the Delaware Supreme Court affirmed that ruling. The Court reasoned that Cochran, a former corporate officer and director, was acting in his personal capacity rather than his official capacity when he obtained the compensation and procured the loan. The Court concluded that when a corporate officer negotiates and executes an employment contract, he is acting in a personal capacity and that the obligations under the contract are personal in nature. The Court observed that when a corporation institutes suit under an employment contract, which involves individual obligations, the suit is not an "official capacity" suit subjection to indemnification under section 145. The Court ruled that the claims by the corporation seeking improperly-paid compensation and loan repayment should be characterized as personal rather than official because the claims did not relate to the former officer's duties as an officer and director.

¶ 14 Another pertinent case discussing actions that are "personal" rather than "official" is *Weaver v. ZeniMax Media, Inc.,* 2004 WL 243163 (Del.Ch.2004). In that case, Weaver sought advancement of costs incurred in defending counterclaims brought against him by Zenimax Media Corporation, his former employer, in an action filed by Weaver. In the underlying action, Weaver claimed entitlement to severance benefits, and Zenimax had raised two counterclaims. In one counterclaim, the corporation maintained that Weaver had breached his fiduciary duties to that corporation by failing to properly perform his job responsibilities, causing a financial loss. In the second counterclaim, the corporation alleged that Weaver had taken more vacation time than allotted and had improperly received reimbursement from the corporation for personal rather than work-related travel. The corporation conceded that it was required to advance costs for its former employee's defense of the first counterclaim. The chancellor then denied indemnification for the second counterclaim.

¶ 15 The chancellor in *Weaver* noted that "by reason of the fact" is not construed so as to embrace every suit instituted against a corporation's officer and director and that actions brought by a corporation against an officer for improperly paid compensation are classic examples of suits **not** brought "by reason of the fact" of the officer's position with the corporation. The chancellor observed that Weaver was not using any of his entrusted corporate powers when he obtained corporate reimbursement of personal rather

than work-related expenses and when he was paid for non-work-related absences exceeding his permitted leave limit. Rather, the chancellor reasoned that Weaver was acting in a personal capacity.

¶ 16 *Stifel* and *Weaver* can be contrasted with *Reddy v. Electronic Data Systems,* 2002 WL 1358761 (Del.Ch.), which also involved a corporation's attempt to recoup wrongfully-paid compensation. Reddy had entered into an incentive compensation agreement with his employer that linked payments to the earnings of the employer. He sought advancement of expenses for two lawsuits. One action was brought by the United States Attorney's Office, and the second action was brought by Reddy's employer. Both lawsuits contained allegations that Reddy engaged in financial fraud against his employer while he was performing his official duties as an employee and that he performed those actions in order to obtain incentive compensation. Reddy allegedly manipulated and falsified financial records to inflate his incentive compensation under the compensation agreement.

¶ 17 *Reddy* involved the same chancellor who decided *Stifel.* That chancellor **granted** advancement in *Reddy* because both actions sought to hold Reddy liable for wrongdoing that he committed in his official capacity as an executive of his employer. The chancellor reasoned that advancement was warranted since all of the misconduct allegedly committed by Reddy involved actions that he performed on the job and in the course of performing his day-to-day managerial duties, with the objective of obtaining excess compensation. The chancellor specifically distinguished his prior holding in *Stifel* because that case did not involve a situation where the breach of the employment agreement stemmed from the identical conduct that was the breach of fiduciary duty. Instead,

the chancellor found that *Stifel* merely involved receipt of a windfall compensation package.

¶ 18 In this case, Appellant's conduct mirrors the conduct at issue in *Stifel* and *Weaver.* Appellant was not using his entrusted corporate powers and was not performing his employment responsibilities when he handed Appellee the fraudulent document for severance pay. Likewise, he did not exercise corporate authority or discharge employment duties when he benefited from the manipulation of the corporate records by Bergonzi and Grass. In contrast, Bergonzi and Grass were performing their official functions when they created the fraudulent documents and manipulated corporate records. The allegations of misconduct as to Appellant do not involve the performance of his corporate duties but relate to misfeasance in the performance of the employment responsibilities of Grass and Bergonzi.

¶ 19 Grass and Bergonzi acted similar to Reddy because their misconduct was not limited to receiving improper compensation. Instead, while performing their employment duties, they engaged in the conduct that resulted in the lawsuits against them and the receipt of that compensation. By contrast, Appellant, like Stifel and Weaver, just received windfall compensation, in a purely personal capacity. The underlying action contained no allegations related to Appellant's performance of duties as an employee of Appellee and was not brought by reason of the fact of his employment. It was instituted because Appellant **individually** received compensation, based upon the wrongful actions of others committed while they were officers of the company.

¶ 20 Our conclusion is not altered by the allegations in the present complaint regarding breach of fiduciary duty. The underlying action was brought to recover

money received personally by Appellant, and his actions to obtain that money were committed for his own personal welfare and were not performed "by reason of the fact" that he was an officer of Appellee. Thus, in the instant case, as in *Stifel* and *Weaver,* the underlying action by the corporation was brought to recover monies paid to Appellant in a personal capacity and based upon actions that were unrelated to his employment responsibilities.

¶ 21 Appellant relies heavily upon *Citadel Holding Corp. v. Roven,* 603 A.2d 818 (Del.Sup.1992), and suggests that it is controlling. We disagree. In that case, the indemnification agreement, which was negotiated separately, contained both the indemnification language in section 145 as well as additional, **broader** language that required indemnification for "**any** action." *Id.* at 820 (emphasis added). Indeed, the Court observed that the agreement provided the director with greater protection than that afforded by the certificate of incorporation and bylaws. Any language contained in that case has no application in this case.

¶ 22 In addition, Appellant maintains that advancement and indemnification should be treated differently and that since he seeks an advancement for legal expenses rather than indemnification for past expenses paid, *Stifel* is not controlling. This contention ignores the basic premise of *Stifel,* which provides that a corporation's obligation for payment of attorney's fees and legal costs can arise only, as provided by the pertinent language, when a legal action was brought against an employee "by reason of the fact" that the employee was an officer or employee of the corporation. *Stifel* applies whether an employee is seeking to be paid in advance for legal fees or the employee is seeking repayment of expended legal fees. The right to indemnification or advancement

depends upon the nature of the allegations in the underlying action rather than the timing of the payment of the legal expenses.

¶ 23 Our analysis might differ if the precise nature of the underlying action could not be determined at the time the employee sought payment for legal expenses. However, in the present case, the nature of the underlying action is readily ascertainable by reference to the allegations in the complaint, and that action is completely unrelated to Appellant's performance of his employment duties.

■ ¶ 24 Appellant also claims that he is entitled to advancement even if a lawsuit is brought against him in a personal capacity. He relies upon the portion of the indemnification provision which states that a person is entitled to indemnification "whether the basis of such proceeding is alleged action in an official capacity as a director or officer **or in any other capacity.**" Appellant takes the bolded language completely out of context, arguing that he is entitled to advancement if a lawsuit is brought against him in "any capacity." Appellant disregards that this language is a dependent clause and that the proceeding still must be brought by "reason of the fact" of his employment. Indeed, the clause itself explicitly refers back to the introductory language by its inclusion of the words, "such proceeding."

¶ 25 If we construed the language as Appellant suggests, he would be entitled to indemnification for any proceeding brought against him in any capacity. In other words, he would be entitled to payment of legal fees and costs by his employer in a divorce action, in a federal prosecution for tax evasion, and in state criminal proceedings pertaining to actions wholly unrelated to his employment. We reject this argument, as it is clear that indemnification is triggered only when an action is

brought based on the performance of employment responsibilities as an officer.

¶ 26 In a similar vein, Appellant posits that "[b]ecause he is being sued by his former employer on account of alleged actions while he was an officer of the company ... [Appellant] is entitled to have his costs of defending against the Underlying Action advanced by [Appellee]." Appellant's brief at 11. This claim is also meritless. The mere fact that Appellant performed acts giving rise to a lawsuit while he was employed as an officer by Appellee does not mean that he is entitled to indemnification in this case. For example, if Appellant had burglarized a neighbor's home while he was employed by Appellee and a criminal action for that burglary had been brought against him, Appellant would be entitled to neither advancement nor indemnification of his legal fees and costs incurred in defending the criminal action.

¶ 27 The acts alleged in the complaint were performed in a personal capacity and solely for personal gain. Thus, the trial court herein correctly concluded that Appellant is not entitled to indemnification.

¶ 28 Order affirmed.