J-A10037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH PHYSICIAN NETWORK, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| CHARLES M. MANGANIELLO, M.D. | : | |
| Appellant | : | No. 175 MDA 2021 |

Appeal from the Order Entered December 29, 2020
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2020-04496

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 21, 2022**

Appellant, Charles M. Manganiello, M.D., appeals from the order entered in the Luzerne County Court of Common Pleas, which granted the motion to compel filed by Appellee, Commonwealth Physician Network, LLC ("CPN"), and directed Appellant to respond fully to CPN's interrogatories and request for production of documents.  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Appellant] previously worked as a physician for [CPN].  The Asset Purchase Agreement ("Agreement") reached between [CPN] and [Appellant] included a non-compete and non-solicitation clause prohibiting [Appellant] from practicing medicine within twenty miles of either his office with [CPN] or Wilkes-Barre General Hospital, and prohibited [Appellant]'s solicitation of former clients with [CPN], for two years following the Agreement's termination.  If either party breached the terms of the Agreement, the other party

could immediately terminate it.

[CPN] alleges that it notified [Appellant] in January 2020 of his suspension and review following alleged non-compliance with other terms of the Agreement. However, [CPN] further alleges that not until March 2, 2020 did [CPN] actually terminate [Appellant]'s employment. When precisely [CPN] terminated [Appellant]'s employment is a matter of dispute between the parties. The alleged termination letter of March 2, 2020 also advised [Appellant] that his violations of the Agreement resulted in an obligation to pay [CPN] $518,000.00. On March 21, 2020, [Appellant] sent [CPN] a letter advising that he intended to resume practice of medicine in his local community. [CPN] believed that by March 23, 2020, [Appellant] was actively seeking local medical office space from Guy M. Fasciana, M.D. less than nine miles from Wilkes-Barre General Hospital and less than four miles from [Appellant]'s prior medical office with [CPN]. On March 28, 2020 [Appellant] issued an advertisement in a local newspaper indicating his return to medical practice and soliciting inquiries. [CPN] also alleges that the advertisement appeared [in] a Change.org Petition shared with approximately 2,109 people.

[CPN] sought to enjoin [Appellant] from further private medical practice and solicitation in violation of the Agreement restrictions and also sought liquidated damages. The injunction request became moot when [Appellant] voluntarily discontinued his private medical practice in late 2020. Earlier, when attempting to proceed with discovery, [CPN] filed a Motion to Compel Answers to [CPN]'s Interrogatories, Request for Production, and Request for Admission on July 7, 2020. An Order dated September 24, 2020 denied [Appellant]'s previously filed Motion for Protective Order and directed [Appellant] to respond to the Interrogatories, Request for Production and Request for Admission within thirty days. The court further footnoted that the same Order addressed [CPN's Motion to Compel] thereby rendering said motion moot.

On October 20, 2020 [CPN] filed a Second Motion to Compel Answers to [CPN]'s Interrogatories and Request for Production via Rule to Show Cause. The court scheduled the Rule to Show Cause for December 11, 2020 via

telephone. The Rule to Show Cause did not include a deadline for [Appellant] to file a response. [CPN] served the Rule to Show Cause upon [Appellant] via email on November 10, 2020…. [Appellant] eventually filed an Answer on December 10, 2020 and served a copy on this court via email after closing hours that same day.

(Trial Court Opinion, filed July 20, 2021, at 1-3) (internal citations omitted).

Appellant raised objections to the following of CPN's interrogatories:

10.     When did you first communicate with Guy Fasciana, M.D. regarding opening a medical practice after January 1, 2020? Describe the communication in detail, including without limitation, the date, time, and exact location of the communication, the participants in the communication, any witnesses to the communication, and any actions that you took as a result of the communication.

11.     Between January 1, 2020 and the opening your medical practice at 605 Main Street, Duryea, Pennsylvania, did you speak to any third party other than Fasciana LLP regarding the possibility of leasing space for a medical practice? If so, describe the communication in detail, including without limitation, the date, time, and exact location of the communication, the participants in the communication, any witnesses to the communication, and any actions that you took as a result of the communication.

12.     Set forth the date and time of the first patient encounter in which you participated at 605 Main Street, Duryea, Pennsylvania.

13.     From January 1, 2020, to March 2, 2020, did you provide medical care to any individual at a location other than 1099 South Township Boulevard, Pittston, Pennsylvania? If so, and without disclosing any information protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), describe each such patient interaction in detail, including without limitation the date, time, and exact location (e.g., the address) of the interaction, the participants in the interaction (without identifying the patient), any witnesses to the interaction, and any actions that you took as a result

- 3 -

of the interaction.

14.      From January 1, 2020 to the present, have you (or are you aware of any individual on your behalf having) communicated with any present or former CPN employee regarding your new medical practice? If so, describe each such communication in detail, including without limitation the date, time, and exact location of the communication, the participants in the communication, any witnesses to the communication, any actions that you took as a result of the communication, and any response that you received from any employee of CPN regarding the communication (or of which you are aware from the individual identified).

15.      From January 1, 2020 to the present, have you (or are you aware of any individual on your behalf having) communicated with any patient whom you treated while you were employed by CPN about providing medical care or the prospect of providing medical care to the patient/individual? If so, and without disclosing any information protected from disclosure by [HIPAA], describe each such communication in detail, including without limitation the date, time, and exact location of the communication, the participants in the communication, any witnesses to the communication, and any actions that you took as a result of the communication.

16.      From January 1, 2020 to the present, have you (or are you aware of any individual on your behalf having) communicated with any media outlet, including, without limitation, any print or digital publication, regarding your medical practice? If so, describe each such communication in detail, including without limitation the date, time, and exact location of the communication, the participants in the communication, any witnesses to the communication, whether the communication concerned CPN or any other medical practice, and any actions that you took as a result of the communication.

\*    \*    \*

18.      Have you or has anyone on your behalf incorporated a business (in any corporate form, *e.g.* a "corporation," "limited liability partnership" or any other form) from January 1, 2020 to the present? If so, identify

the name of the business or business entity, the date of incorporation, the location of the business and any other individuals with whom you are in partnership?

\* \* \*

20. From January 1, 2020, to the present, have you communicated with Janet Caputo or Attilio Laschi, Jr., regarding (1) your medical practice or (2) any petition or organizing effort? If so, describe each such communication in detail, including without limitation the date, time, and exact location of the communication, the participants in the communication, any witnesses to the communication, and any actions that you took as a result of the communication.

(CPN's Second Motion to Compel, Exhibit B, filed 10/30/20, at 7-10).

Appellant raised objections to the following of CPN's request for production of documents:

1. Produce all employee time and payroll records of your current medical practice (i.e., at 605 Main Street, Duryea, Pa.) reflecting time that you or any individual working to support your medical practice (whether as an employee or contractor) have worked or payments made to any employee working to support your medical practice from January 1, 2020, to the present.

2. Produce a copy of any appointment diary, chronology, log, calendar, appointment book, or schedule reflecting medical care that you provided or were scheduled to provide which was kept by you or any individual on your behalf from January 1, 2020 to the present. In doing so, please redact the patient's name, any other identifying information, his/her diagnosis (if any), and any other information protected from disclosure by [HIPAA].

3. Produce all documents concerning, evidencing or reflecting any communication between you (or any individual on your behalf) and any current or former CPN employee, including without limitation Cheri Rash, from January 1, 2020, to the present.

4.      Produce all documents concerning, evidencing or reflecting any communication from January 1, 2020, to the present between you (or any individual on your behalf) and any individual whom you treated while employed by CPN. In so doing, please redact the patient's name, any other identifying information, his/her diagnosis (if any), and any other information protected from disclosure by HIPAA.

5.      Produce all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any media outlet, including without limitation any print or digital publication, from January 1, 2020 to the present

6.      Produce all documents reflecting or referencing the status of your employment with CPN that you or any person on your behalf received from any agent, employee or representative of CPN from January 1, 2020 to the present.

7.      Produce all documents reflecting or referencing the status of your employment with CPN that you or any person on your behalf sent to any agent, employee or representative of CPN from January 1, 2020 to the present.

8.      Produce all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any insurance agent, broker, or provider regarding insurance coverage for your medical practice, including without limitation medical malpractice coverage or general commercial liability.

9.      Produce all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any accountant regarding your medical practice from January 1, 2020, to the present.

10.      Produce all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any business consultant regarding your medical practice from January 1, 2020, to the present.

11.      Produce all documents concerning, evidencing, or reflecting any communication between you (or any

individual on your behalf) and any medical supplier or equipment provider regarding your medical practice from January 1, 2020, to the present.

12. Produce all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any office supplier or equipment provider regarding your medical practice from January 1, 2020, to the present.

13. Produce all documents concerning, evidencing, or reflecting any communication between you (or any individual on your behalf) and any agent or employee of Geisinger Health System regarding your medical practice from January 1, 2020, to the present.

14. Produce all documents concerning, evidencing, or reflecting any efforts by you (or any individual on your behalf) to incorporate (in any form) any business between January 1, 2020 and the present.

15. Produce all documents concerning, evidencing, or reflecting any calls, text messages, email messages, multimedia messages, or other communications made to or from any mobile phone used by you from January 1, 2020 to the present which relate or refer to the status of your employment with CPN and/or your medical practice after January 15, 2020.

16. Produce all documents concerning, evidencing, or reflecting any communication between you and Eileen Reilly or any of her partners, associates, employees, or agents regarding the status of your employment with CPN as of January 14, 2020 to the present and/or efforts to open a private medical practice after January 15, 2020.

\*　　\*　　\*

19. Produce any and all documents (not otherwise produced) that you believe support your belief that [CPN] "further materially breached the Agreement on January 14, 2020 when it immediately terminated [your] employment without cause," as alleged in Paragraph 6 of your Answer to Motion for Preliminary Injunction.

20.    Produce any and all documents (not otherwise produced) that you believe support your belief that "[f]ollowing [CPN]'s material breaches of the Agreement, [you] had no obligation to continue performance under purported restrictive covenants contained in the Agreement," as alleged in Paragraph 6 of your Answer to Motion for Preliminary Injunction.

\*    \*    \*

24.    Produce any and all documents (not otherwise produced) that you believe support your denial "that [you were] obligated, or refused, to participate in [CPN]'s purported 'compliance investigation,' as alleged in Paragraph 55 of your Answer to Motion for Preliminary Injunction.

25.    Produce any and all documents (not otherwise produced) that you believe support your belief that [CPN's] "protectable business interests are outweighed by [your] interest in earning a living in [your] chosen profession and the general interest of the public," as alleged in Paragraph 61 of your Answer to Motion for Preliminary Injunction.

(CPN's Second Motion to Compel, Exhibit C, filed 10/30/20, at 7-10).

Following oral argument, the court issued an order on December 29, 2020, granting CPN's motion to compel and directing Appellant to serve full and complete responses to CPN's discovery requests.  Appellant filed a notice of appeal on January 25, 2021.  On February 8, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on March 17, 2021.

Appellant raises the following issues of our review:

Whether the trial court erred in overruling [Appellant]'s objections to written discovery on the basis of the physician-patient privilege, Pennsylvania Rule of Civil Procedure

- 8 -

4003.6, and constitutional privacy rights when the written discovery requests sought the disclosure of third party medical and health information.

Whether the trial court erred in overruling [Appellant]'s objections to written discovery on the basis of the attorney client privilege, the work product doctrine, and Pennsylvania Rule of Civil Procedure 4003.3 when the written discovery requests substantially and/or exclusively seek to discover communications between [Appellant] and his counsel of record as well as the mental impressions, conclusions, opinions, notes, and legal research of [Appellant]'s counsel of record.

Whether the trial court erred in overruling [Appellant]'s objections to written discovery on the basis of constitutional privacy rights when the written discovery requests sought the disclosure of confidential financial records, proprietary business information, and private communications with accountants, insurance brokers, family members and friends.

(Appellant's Brief at 4).[1]

As a prefatory matter, "[a]n appeal may be taken only from a final order unless otherwise permitted by statute or rule." *Carbis Walker, LLP v. Hill, Barth and King, LLC*, 930 A.2d 573, 577 (Pa.Super. 2007) (quoting *Ben v. Schwartz*, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999)). Collateral orders are an exception to this general rule. *See* Pa.R.A.P. 313.

> To qualify as a collateral order under Rule 313, the order must be separate and distinct from the underlying cause of

---

[1] We observe that the issues presented in Appellant's statement of questions involved are phrased differently than those raised in his Rule 1925(b) statement. We caution Appellant that the failure to properly state the issues to be resolved could result in waiver on appeal. Nevertheless, because the issues presented on appeal were fairly suggested by those raised in the Rule 1925(b) statement, we decline to find waiver here.

action. Additionally, it is not sufficient that the issue under review is important to a particular party; it must involve rights deeply rooted in public policy going beyond the particular litigation at hand. Finally, there must be no effective means of review available after an Order requiring the production of documents is reduced to judgment.

***Berkeyheiser v. A-Plus Investigations, Inc.***, 936 A.2d 1117, 1123-24 (Pa.Super. 2007) (internal citations and quotation marks omitted). "[R]ule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral." ***Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.***, 143 A.3d 930, 936 (Pa.Super. 2016), *appeal denied*, 641 Pa. 251, 167 A.3d 701 (2017) (internal citations and quotation marks omitted). "[T]he collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." ***Rae v. Pennsylvania Funeral Directors Ass'n***, 602 Pa. 65, 80, 977 A.2d 1121, 1130 (2009).

"Generally, discovery orders are deemed interlocutory and not immediately appealable, because they do not dispose of the litigation. On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 where the issue of privilege is separable from the underlying issue." ***Meyer-Chatfield Corp., supra***.

Significantly, Pennsylvania courts have held that discovery

> orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action. This Court has also recognized that an appellant's colorable claim of attorney-client and attorney work-product privilege can establish the propriety of immediate appellate review.

**Berkeyheiser, supra** (internal citations and quotation marks omitted).

Here, Appellant claims error in the trial court's discovery order on the grounds that CPN's discovery requests were irrelevant, overly broad, unduly burdensome, and already in CPN's possession. These claims are not separable from the main cause of action, however, because an analysis of the relevance and scope of the discovery requests necessitates examination of the parameters of the underlying breach of contract action. **See Berkeyheiser, supra**. Additionally, Appellant has failed to demonstrate that these issues are deeply rooted in public policy beyond the litigation at hand. **Id.** Therefore, Appellant's objections based on relevance and the scope of the discovery requests do not meet the standard set forth in Rule 313 to qualify as immediately reviewable under the collateral order doctrine. **See Meyer-Chatfield Corp., supra** (holding that objections on grounds that discovery was overbroad and burdensome are not appealable as collateral order). **See also Commonwealth v. Flor**, 635 Pa. 314, 325 n.8, 136 A.3d 150, 156 n.8 (2016) (stating: "Litigants may not…rely upon Rule 313 to challenge discovery orders for reasons unrelated to privilege claims, without satisfying the requirements of Rule 313 as to each issue"). Accordingly, we are without jurisdiction to address Appellant's objections based on relevance and scope of

discovery requests.[2]

Nevertheless, Appellant also raises assertions of physician-patient privilege, attorney-client privilege, attorney work product privilege and the right to privacy. These claims are separable from the main cause of action because this Court can address those issues without an analysis of the underlying breach of contract action. Additionally, the privileges asserted by Appellant implicate rights deeply rooted in public policy. *See Berkeyheiser, supra*. Further, enforcement of the order would require Appellant to disclose the disputed information and documents. Thus, there would be no effective means of review available absent our immediate review. *Id.* Accordingly, the order on appeal as it relates to Appellant's assertions of privilege and privacy rights is collateral to the main cause of action and immediately reviewable. *See Id. See also Jones v. Faust*, 852 A.2d 1201 (Pa.Super. 2004) (reviewing discovery order as collateral to main cause of action where appellant asserted order violated rights to privacy and confidentiality).

In his issues combined,[3] Appellant argues that CPN's interrogatories and request for production of documents seek information that is privileged.

_____

[2] Significantly, the dissent focuses primarily on the relevance and scope of the discovery requests at issue. Nevertheless, for the reasons discussed above, those claims are not properly before us under the collateral order doctrine.

[3] Pursuant to Pa.R.A.P. 2119(a), the argument shall be divided into as many parts as there are questions to be argued. *See* Pa.R.A.P. 2119(a). Nevertheless, Appellant purports to conflate some of his arguments
*(Footnote Continued Next Page)*

Specifically, Appellant asserts that request for production #15 and #16 seek to discover privileged communication between Appellant and his attorney. Appellant further contends that request for production #20 requests Appellant's counsel to produce her legal research and notes in support of Appellant's claims. Additionally, Appellant claims that interrogatory #15 and #20 and request for production #2 and #4 request information about confidential communication between Appellant and his patients that is protected by the physician-patient privilege. Appellant maintains that redacting patient names and contact information does not guarantee anonymity because CPN "has access to many such patients' unredacted prior medical records for comparison." (Appellant's Brief at 30).

Further, Appellant asserts that the court failed to adequately consider his and his patients' constitutionally protected privacy interests. Appellant argues that the court ordered the disclosure of confidential third-party medical records without adequately weighing competing interests and analyzing the actual need for disclosure of the requested information and documents. Appellant argues that the need to impeach a physician during civil litigation does not outweigh the privacy rights of a third-party patient. Similarly, Appellant contends that the court failed to properly consider his asserted privacy interests in avoiding disclosure of personal communication with his

_____

concerning each privilege asserted for the discovery requests at issue. Therefore, we will discuss Appellant's issues together.

friends and associates, and confidential and proprietary business information. Appellant concludes the court erred by ordering Appellant to produce information that is privileged or in violation of his constitutional privacy rights and this Court should vacate the discovery order. We disagree.

This Court has explained:

> "Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." **In re Thirty-Third Statewide Investigating Grand Jury**, 624 Pa. 361, [379,] 86 A.3d 204, 215 (2014). Indeed, the attorney-client privilege is now embodied in a statute. **See** 42 Pa.C.S. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."). Where "the issue is the proper interpretation of a statute, it poses a question of law," as well. **Phoenixville Hosp. v. Workers' Compensation Appeal Board**, 623 Pa. 25, [38,] 81 A.3d 830, 838 (2013). Thus, the standard of review is *de novo,* and the scope of review is plenary. [**Commonwealth v. Flor**, 635 Pa. 314, 322, 136 A.3d 150, 154 (2016)]; [**Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1019 (Pa.Super. 2015)].

**Brown v. Greyhound Lines, Inc.**, 142 A.3d 1, 8 (Pa.Super. 2016).

The Rules of Civil Procedure set forth guidelines on discoverable materials as follows:

> **Rule 4003.1. Scope of Discovery Generally. Opinions and Contentions**
>
> (a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party,

including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(c) Except as otherwise provided by these rules, it is not ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact.

Pa.R.C.P. 4003.1.

"Certain materials are privileged and beyond the scope of discovery." *Berkeyheiser, supra* at 1126. "[T]he attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." *Red Vision Systems, Inc. v. National Real Estate Information Services, L.P.*, 108 A.3d 54, 60 (Pa.Super. 2015), *appeal denied*, 632 Pa. 663, 116 A.3d 605 (2015). The privilege is defined by statute as follows:

### § 5928. Confidential communications to attorney

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

"Despite the language of the statute, communications from an attorney to a client—not just communications by a client to an attorney—are protected

under Pennsylvania law." ***Office of Disciplinary Counsel v. Baldwin***, ___ Pa. ___, ___, 225 A.3d 817, 849 (2020). "The purpose of the attorney-client privilege is to 'foster a confidence between attorney and client that will lead to a trusting and open dialogue.'" ***Berkeyheiser, supra*** at 1126 (quoting ***Gocial v. Independence Blue Cross***, 827 A.2d 1216, 1222 (Pa.Super. 2003)).

The attorney-client privilege is not absolute. ***See Red Vision Systems, supra*** at 62. "The privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed." ***Id.*** (quoting ***Cohen v. Jenkintown Cab Co.***, 357 A.2d 689, 693-94 (Pa.Super. 1976)).

Unlike the attorney-client privilege, the work-product privilege "does not necessarily involve communications with a client." ***Gillard v. AIG Ins. Co.***, 609 Pa. 65, 89 n.16, 15 A.3d 44, 59 n.16 (2011). Pennsylvania Rule of Civil Procedure 4003.3 governs attorney work product as follows:

**Rule 4003.3. Scope of Discovery. Trial Preparation Material Generally**

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research

or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

**Explanatory Comment—1978**

The amended Rule radically changes the prior practice as to discovery of documents, reports and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative, including his attorney, consultant, surety, indemnitor, insurer or agent.

\*　　\*　　\*

There are, however, situations under the Rule where the legal opinion of an attorney becomes a relevant issue in an action; for example, an action for malicious prosecution or abuse of process where the defense is based on a good faith reliance on a legal opinion of counsel. The opinion becomes a relevant piece of evidence for the defendant, upon which defendant will rely. The opinion, even though it may have been sought in anticipation of possible future litigation, is not protected against discovery. A defendant may not base his defense upon an opinion of counsel and at the same time claim that it is immune from pre-trial disclosure to the plaintiff.

As to representatives of a party, and sometimes an attorney, there may be situations where his conclusions or opinion as to the value or merit of a claim, not discoverable in the original litigation, should be discoverable in subsequent litigation. For example, suit is brought against an insurance carrier for unreasonable refusal to settle, resulting in a judgment against the insured in an amount in excess of the insurance coverage. Here discovery and inspection should be permitted *in camera* where required to weed out protected material.

\*　　\*　　\*

Pa.R.C.P. 4003.3.

Further, the physician-patient privilege is codified as follows:

### § 5929. Physicians not to disclose information

No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

42 Pa.C.S.A. §5929.

"Pennsylvania law distinguishes between information communicated to a physician by a patient and information acquired through examination and observation." *Stenger v. Lehigh Valley Hosp. Ctr.*, 530 Pa. 426, 434, 609 A.2d 796, 800 (1992). "The distinction originates in the rationale of the statute which was designed to create a confidential atmosphere in which a patient will feel free to disclose all possible information which may be useful in rendering appropriate treatment." *Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa.Super. 2005), *appeal denied*, 588 Pa. 789, 906 A.2d 1197 (2006). Therefore, "the patient-physician privilege is limited to information which would offend the rationale of the privilege, *i.e.*, information directly related to the patient's communication and thus tending to expose it." *Stenger, supra* at 440, 609 A.2d at 803. Additionally, the privilege is intended to protect "a patient's communications if doing so would release confidential information … which would blacken the character of the patient." *Grimminger, supra* at 279-80.

Additionally, the U.S. and Pennsylvania Constitutions provide protection for an individual's right to privacy. *See Stenger, supra* at 434, 609 A.2d at 800. However, this right is not absolute and must be balanced against weighty competing private and state interests. *Id.* Our Supreme Court has recognized "an individual interest in avoiding disclosure of personal matters…" *Id.* "The object of such a right is, in part, to protect an individual from revealing matters which could impugn his character and subject him to ridicule or persecution." *Id.* Generally, this privacy interest is not offended by anonymous disclosures as the shield of anonymity protects an individual from disrepute. *See id.* at 435, 609 A.2d 801.

Instantly, the court considered each of Appellant's objections to CPN's discovery requests and determined that they were without merit. Regarding Appellant's objections based on the physician-patient privilege in his first appellate issue, the court found that the limited information requested by CPN did not encroach on the information protected by the privilege. Appellant asserts this privilege in response to CPN's request for production #2 and #4 and interrogatories #15 and #20. Request for production #2 only requests information about patient scheduling, which does not require Appellant to reveal confidential patient communication protected by the privilege. *See Grimminger, supra*; *Stenger, supra*. Similarly, interrogatory #20 requests information about Appellant's communication with two patients regarding Appellant's medical practice and any petitions and organizing efforts they

undertook to support Appellant. Although this request seeks information about communication between Appellant and his patients, the communication in question is unrelated to providing medical care and thus, falls outside of the scope of the privilege. *See id.*

Both request for production #4 and interrogatory #15 request information about any communication from January 1, 2020 to present that Appellant had with patients he treated while employed by CPN. CPN seeks this information to gather evidence on whether Appellant solicited CPN's patients in violation of the Agreement. To limit the information sought to the desired purpose, CPN's requests specifically direct Appellant to redact names and identifying information, medical diagnosis and any other information protected from disclosure by HIPPA.[4] Therefore, the requested information

---

[4] HIPPA's privacy rules prevent the disclosure of protected health information. *See* 45 C.F.R. § 164.502(a). Protected health information includes:

> Individually identifiable health information is information that is a subset of health information, including demographic information collected from an individual, and:
>
> (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>
> > (i) That identifies the individual; or

*(Footnote Continued Next Page)*

on patient communication would exclude identifying information and information about medical history, diagnosis, and medical care provided to the individual. We agree with the trial court that the limited information sought does not fall within the purview of the physician-patient privilege. *See Grimminger, supra*; *Stenger, supra*. With identifying information and medical details redacted, it is unclear how the information produced could blacken the character of the patient.[5] *See id*. Accordingly, we see no error by the trial court in ordering Appellant to provide complete answers to the discovery requests to which Appellant asserted the physician-patient privilege.[6] *See Berkeyheiser, supra*. *See also Brown, supra*.

Regarding Appellant's objections based on attorney-client privilege and

_____

> (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103

[5] Appellant's assertion that anonymity is not guaranteed because CPN can compare the records to prior unredacted medical records in CPN's possession is speculative at best. Additionally, even if patient identities were made known to CPN, the requested information does not include sensitive medical information protected by the privilege.

[6] Appellant's reliance on Rule 4003.6 is misguided. Rule 4003.6 states that "information may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter." Pa.R.C.P. 4003.6. This rule governs the procedure by which medical information may be obtained about **a party**. As CPN has not sought to obtain medical information about Appellant, this rule is inapplicable to the instant matter.

work-product privilege presented in his second appellate issue, the court explained that it did not order Appellant to produce privileged information to CPN. Rather, the court noted that Appellant responded to the discovery requests with a bald assertion of privilege without following the procedure set forth in CPN's requests on how to assert privilege. Specifically, CPN's requests state that Appellant should identify the matter, describe the subject matter, specify the privilege asserted, and identify all persons who have had access to the matter. As such, the court's order merely directed Appellant to provide full responses to CPN's discovery requests and to assert the proffered privilege in the manner requested by CPN. Consequently, we see no error in the court's order directing Appellant to provide complete answers to CPN's discovery requests as it related to Appellant's objections based on attorney-client privilege and work-product privilege. **_See Berkeyheiser, supra_**. **_See also Brown, supra_**.

Further, with respect to Appellant's third appellate issue, the court determined that Appellant's objections to CPN's requests based on his privacy interests were also without merit. Specifically, Appellant raised objections based on privacy rights to CPN's interrogatories ##10-16 and ##18-20, and request for production ##1-14, 19, 24, and 25. Interrogatories ##10, 11, 14, 16, 18 and 19, and request for production ##1, 3, and 5-15, request information and records about conversations that Appellant had with peers, business consultants, insurance providers, accountants, suppliers, media

outlets and CPN's former employees regarding the set up and operation of Appellant's medical practice and Appellant's employment with CPN and other entities. Request for production ##19, 24 and 25 request Appellant to produce documents that support various specific claims in Appellant's answer to CPN's complaint. Appellant's brief fails to cite to any relevant authority to demonstrate that he has a recognized privacy interest in avoiding disclosure of the information requested in the discovery requests listed above. As such, Appellant has waived this argument. **See In re Estate of Whitley**, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating: "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority").

The only privacy interest properly identified by Appellant is a patient's right to avoid disclosure of confidential medical information. Of the discovery requests to which Appellant objected, interrogatory ##12, 13, and 20, and request for production ##2 and 4 request information about Appellant's patients. However, the right to privacy does not cover all patient information but is limited to confidential medical information which would impugn the character of the patient or subject the patient to ridicule if revealed. **See Stenger, supra**. As previously discussed, CPN only requested patient information with all identifying information and protected medical information redacted. As such, the limited, anonymous patient information requested by CPN does not implicate a protected privacy interest. **See id.** Therefore, we

see no error in the court's decision to overrule Appellant's objections to CPN's discovery requests based on a violation of privacy rights. *See Berkeyheiser, supra*. *See also Brown, supra*. Accordingly, Appellant is not entitled to relief on any of his claims on appeal and we affirm.

Order affirmed.

Judge Kunselman joins this memorandum.

President Judge Panella files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2022