**ABAKAN, INC., Plaintiff,**

v.

**UPTICK CAPITAL, LLC, Defendant.**

**No. 12 Civ. 8088 (VM).**

United States District Court,
S.D. New York.

May 2, 2013.

Steven E. Rosenfeld, Law Offices of Steven E. Rosenfeld, PC, New York, NY, for Plaintiff.

John Michael Deitch, Joseph Peter Fiteni, Mendes & Mount, LLP, Newark, NJ, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

On November 7, 2012, Plaintiff Abakan, Inc. ("Abakan") filed the complaint (the "Complaint" or "Compl.") in this action against Defendant Uptick Capital, LLC ("Uptick"), alleging breach of contract, fraudulent misrepresentation, and unjust enrichment under New York State law. Abakan also alleged that it was entitled to reimbursement by Uptick of any legal fees incurred in connection with bringing the instant action. On January 15, 2013, Uptick moved for an order requiring Abakan to advance Uptick's legal fees and ex-

penses incurred in connection with the instant action. *See* Mem. of Law in Supp. of Def. Uptick Capital, LLC's Mot. for an Order Requiring Advancement of Legal Fees and Expenses, Jan. 15, 2013, Dkt. No. 9 (the "Uptick Memorandum" or "Uptick Mem."). On February 12, 2013, Abakan cross-moved for an order holding that Uptick is not entitled to indemnification in the instant action. *See* Mem. of Law in Supp. of Pl.'s Cross–Motion and in Opp'n to Def.'s Mot. for Advancement of Legal Fees, Feb. 12, 2013, Dkt. No. 16 (the "Abakan Memorandum" or "Abakan Mem.").

## I. *BACKGROUND* [1]

On November 1, 2010, Abakan and Uptick entered into the Consulting Agreement that is the subject of the instant action. *See* Compl., Ex. A. Abakan asserts that Uptick failed to perform its obligations under the terms of the Consulting Agreement, made various fraudulent statements to induce Abakan to enter into the Consulting Agreement, and would be unjustly enriched if it were permitted to retain the 60,000 shares of Abakan stock it received in exchange for its performance under the Consulting Agreement.

For purposes of these motions, the Consulting Agreement provides in relevant part:

> [Abakan] shall indemnify and hold harmless [Uptick] and each of its controlling persons, subsidiaries, affiliates, directors, officers, and employees (*'Indemnified Persons'*), from and against all losses, claims, damages and liabilities, and all suits, actions, claims, proceedings and investigations in respect thereof, relating to or arising out of the activities contemplated by [Uptick's] engagement described in the Consulting Agreement to which this Attachment 'A' is attached. The foregoing shall include the reasonable expenses incurred by [Uptick] and Indemnified Persons in appearing as witnesses or being deposed, producing documents or otherwise being involved in any suits, actions, proceedings or investigations. [Abakan] shall reimburse [Uptick] and each Indemnified Person for all reasonable expenses, including attorneys' fees and disbursements, as they are incurred in connection with investigating, preparing for or defending any suit, action, proceeding or investigation, whether or not [Uptick] or such Indemnified Person shall be a party thereto, whether or not the same shall involve or result in any liability on the part of [Uptick] or such Indemnified Person: provided that [Abakan] shall advance such expenses only upon receipt of an undertaking by [Uptick] or such person to repay such advances if it shall ultimately be determined that [Uptick] or such person was not entitled to be indemnified. Notwithstanding the forgoing, [Abakan] shall not, however, be obligated to indemnify [Uptick] or any Indemnified Person in respect of any loss, claim, damage, liability or expense to the extent the same is found by a final judgment of a court of competent jurisdiction to have resulted from gross negligence, willful misconduct or bad faith on the part of [Uptick] or such Indemnified Person.

Compl., Ex. A at 10 (the "Indemnification Provision"). Uptick has asserted that, pursuant to the terms of the Consulting Agreement, it is "entitled to have any legal fees and expenses advanced ... during the course of the action." Uptick Mem. at 1.

---

1. The facts below are taken from the Complaint and the documents cited or relied upon for the facts pled therein. Except where specifically-quoted, no further reference to the Complaint will be made.

Abakan asserts that Uptick is not entitled to indemnification or advancement in this action.

## II. *LEGAL STANDARD*

"It is axiomatic under New York State law, which the parties agree applies, that '[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties.'" *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir.2011) (*quoting Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir.1997)). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 750 N.Y.S.2d 565, 569, 780 N.E.2d 166 (2002) (internal quotation marks omitted).

In a dispute over the meaning of a contract, "the threshold question is whether the contract is ambiguous." *Lockheed Martin*, 639 F.3d at 69. "'Ambiguity is determined by looking within the four corners of the document, not to outside sources.'" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir.2009) (*quoting Kass v. Kass*, 91 N.Y.2d 554, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998)). Whether a contract is ambiguous is a question of law for the Court. *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir.2010).

It is well settled that a contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin*, 639 F.3d at 69. "[A] written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Maverick Tube*, 595 F.3d at 467 (internal quotations and citations omitted). In such circumstances, courts should "read the integrated contract as a whole to ensure that undue emphasis is not placed upon particular words and phrases, and to safeguard against adopting an interpretation that would render any individual provision superfluous." *Id.* at 468 (internal quotations and citations omitted); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir.2005) ("In interpreting a contract under New York law, words and phrases ... should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.") (internal quotations omitted). "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Maverick Tube*, 595 F.3d at 467 (internal citations omitted). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Id.* (internal quotations omitted).

Conversely, a contract is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context" of the entire agreement as a whole. *Lockheed Martin*, 639 F.3d at 69. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989), unless each is a "reasonable" interpretation, *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992). Courts should not find the contract language to be ambiguous where such an interpretation urged by one party would "strain [ ] the contract language beyond its reasonable and ordinary meaning." *Bethlehem Steel*

*Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590 (1957). However, where the contract language creates ambiguity, "extrinsic evidence as to the parties' intent may properly be considered." *JA Apparel*, 568 F.3d at 397 (citation omitted). "Where there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." *Id.* (citations omitted).

### III. *DISCUSSION*

 The parties dispute the meaning and application of the Indemnification Provision contained in the Consulting Agreement. Under the general rule in New York, "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). Promises to indemnify "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" *id.*, because "the general American rule requires parties to bear their own litigation expenses," *Happy Kids, Inc. v. Glasgow*, No. 01 Civ. 6434, 2002 WL 72937, at *2 (S.D.N.Y. Jan. 17, 2002) (noting that a promise by one party to indemnify the other for litigation expenses in an action between them is "exceptional").

 "Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, [courts] should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d 365,

548 N.E.2d 903. The promise should not be found "unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* at 491–92, 549 N.Y.S.2d 365, 548 N.E.2d 903. "Where a general indemnification provision does not explicitly provide for indemnification for suits *between* the parties to the contract, a claim for such indemnification must fail." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F.Supp.2d 308, 329 (S.D.N.Y.2009) (emphasis in original); *see also In re Refco Sec. Litig.*, 890 F.Supp.2d 332, 343 (S.D.N.Y.2012) ("A provision containing only broad language that does not unequivocally indicate that the parties intended to indemnify attorneys' fees in lawsuits between themselves will ordinarily not support a claim for indemnity in suits between the parties."); *see also Fishbein v. Miranda*, 785 F.Supp.2d 375, 392 (S.D.N.Y.2011).

 In addition, " 'in contexts in which contracting parties could have anticipated that they would be subject to third-party claims, courts apply a presumption against concluding that indemnification clauses cover litigation costs incurred in the course of resolving non-third party claims.' " *Fishbein*, 785 F.Supp.2d at 392 (*quoting Goshawk Dedicated Ltd. v. Bank of N.Y.*, No. 06 Civ. 13758, 2010 WL 1029547, at *7 (S.D.N.Y. Mar. 15, 2010); *Refco*, 890 F.Supp.2d at 343 ("The presumption is that the agreement does not cover attorney fees in an action between the parties.")). Thus, if the indemnity provision is subject to a reasonable interpretation one way or another, the agreement must be construed not to indemnify legal expenses in an action between the parties to the contract. *See Refco*, 890 F.Supp.2d at 343.

 Further, "[w]hen an indemnification agreement contains provisions that

appear to be inapplicable to suits between the contracting parties—such as requiring that notice of a claim be given to the indemnitor or allowing the indemnitor to assume the indemnitee's defense—the courts have concluded that the contract does not evidence an unmistakably clear intent to indemnify attorney's fees incurred in a lawsuit between the contracting parties." *Id.* at 341; *see also PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.,* No. 05–6885–CV, 2006 WL 3370698, at *1 (2d Cir. Nov. 20, 2006); *Hooper,* 74 N.Y.2d at 492–93, 549 N.Y.S.2d 365, 548 N.E.2d 903; *Goshawk,* 2010 WL 1029547, at *6. On the other hand, where it is apparent that no third-party claims were contemplated by the parties at the time the contract was executed, then the agreement should be construed to provide indemnity for claims between the parties—otherwise the agreement would be superfluous. *See, e.g., Refco,* 890 F.Supp.2d at 344.

■ In the present case, the Consulting Agreement contains two clauses that are inapplicable to lawsuits between Abakan and Uptick. First, the Consulting Agreement provides: "If any suit, action, claim, proceeding or investigation is instituted against [Uptick] or any Indemnified Person aforesaid in respect of which indemnification may be sought hereunder, [Uptick] or such person shall promptly notify [Abakan] thereof in writing...." Compl., Ex. A at 10. Second, the Consulting Agreement provides: "[Abakan] shall be entitled to assume the defense of any suit, action or proceeding with counsel reasonably satisfactory to [Uptick]...." *Id.* Moreover, it is manifest that third-party claims arising from the terms of the Consulting Agreement were contemplated, given the fact that the Consulting Agreement set out the terms by which Uptick would market an investment in Abakan to third-party investors. *See* Abakan Mem. at 6.

The terms of the Consulting Agreement provide for indemnification "from and against all losses, claims, damages and liabilities, and all suits, actions, claims, proceedings and investigations in respect thereof, relating to or arising out of the activities contemplated by [Uptick's] engagement...." Compl., Ex. A at 10. This language does not unequivocally or unmistakably cover disputes between the parties. Moreover, similar provisions have been consistently construed not to cover intra-party lawsuits both in the Second Circuit and in New York State courts. *See Hooper,* 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903; *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 21 (2d Cir.1996); *GEM Advisors,* 667 F.Supp.2d at 329–30 (S.D.N.Y.2009). Defendants have not "establish[ed] that the agreement's indemnification provision satisfied the exacting standard of language 'exclusively or unequivocally referable to claims between the parties themselves' as opposed to third-party claims only." *Gate Five, LLC v. Knowles–Carter,* 100 A.D.3d 416, 953 N.Y.S.2d 193, 194 (2012) (*quoting Hooper,* 74 N.Y.2d at 492, 549 N.Y.S.2d 365). Therefore, the Court finds that, as a matter of law, the Indemnification Provision of the Consulting Agreement does not provide for indemnification of Uptick by Abakan in a lawsuit between the parties, such as the instant action.

At this time, however, Uptick has not moved for indemnification of its legal expenses by Abakan, but instead seeks an order requiring Abakan to advance its legal fees and expenses incurred in connection with the instant action. However, only those fees that may ultimately be eligible for indemnification may be advanced. *See* Compl., Ex. A at 10 ("[Abak-

an] shall advance such expenses only upon receipt of an undertaking by [Uptick] or such person to repay such advances if it shall ultimately be determined that [Uptick] or such was person was not entitled to be indemnified."). Because the Court has determined that legal fees incurred by Uptick in the instant action are not eligible for indemnification, it also finds that Abakan is not obligated under the Consulting Agreement to advance legal expenses and fees to Uptick here.

Uptick cites to *Crossroads ABL, LLC v. Canaras Capital Management, LLC,* 954 N.Y.S.2d 758, 35 Misc.3d 1238(A), 2012 WL 2125991 (2012), in urging the Court to reserve judgment on the question of indemnification and to grant Uptick's request for an order requiring Abakan to advance Uptick's legal fees and expenses. However, in that case, the court found that the indemnification provision at issue passed the test in *Hooper* and concluded that there was "no basis by which [it could] conclude that intra-party actions were not intended to be within the ambit of this provision." *Id.* 2012 WL 2125991 at *3. The court in *Crossroads* explicitly relied on this finding in holding that the defendants were eligible for advancement under the terms of the contract at issue. *Id.* As such, *Crossroads* is distinguishable from the present case.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that Defendant Uptick Capital, LLC's Motion for an Order Requiring Advancement of Legal Fees and Expenses (Dkt. No. 8) is hereby **DENIED;** and it is further

**ORDERED** that Plaintiff Abakan, Inc.'s Cross–Motion for an Order Holding that Defendant is Not Entitled to Indemnification in this Action (Dkt. No. 13) is hereby **GRANTED.**

**SO ORDERED.**