Futures Grp., Inc. v. Brosnan, 2023 NCBC 4.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 7106

THE FUTURES GROUP, INC. and
GEOFF G. CRAMER,

        Plaintiffs,

    v.

DENIS BROSNAN,

        Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGEMENT**

1.     Denis Brosnan ("Brosnan") served as Chair of the Board of Directors of The Futures Group, Inc. ("Futures") before disputes with his former son-in-law and Futures' Chief Executive Officer, Geoff Cramer ("Cramer"), led to Brosnan's abrupt removal from the Board on 23 March 2021.  This lawsuit followed on 6 October 2021.

2.     Plaintiffs seek a declaration that Brosnan is not entitled to recover the monies and ownership interest in Futures that Brosnan has demanded.  In addition, Plaintiffs sue Brosnan for breach of the fiduciary duties he owed Futures as one of its directors, alleging, among other things, that he destroyed and falsified corporate records.  (*See generally* First Am. Compl., ECF No. 13.)

3.     Brosnan responds with a series of counterclaims, including one for advancement of litigation expenses.  (Answer First Am. Compl. and Counterclms. ["Counterclms."], ECF No. 30.)  The matter is before the Court on Defendant's Motion for Partial Summary Judgement ("Motion"), (ECF No. 68), with respect to that claim.

4. Having considered the Motion, the related briefs, the arguments of counsel at a hearing on the Motion, and other relevant matters of record, the Court **GRANTS** the Motion.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Walter L. Tippett, Jr., Jimmy C. Chang, and Lindsey S. Barber, for Plaintiff Futures Group, Inc.*
>
> *Sigmon Law, PLLC, by Mark R. Sigmon, for Plaintiff Geoff G. Cramer.*
>
> *Miller Monroe & Plyer, PLLC, by Jason A. Miller, Paul Flick, and John W. Holton, for Defendant Denis Brosnan.*

Earp, Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

5. The facts underlying this case are detailed in an earlier Order and Opinion. *See generally Futures Grp., Inc. v. Brosnan*, 2022 NCBC LEXIS 150 (N.C. Super. Ct. Dec. 7, 2022). In short, Futures is a Delaware corporation with a principal place of business in Wake County, North Carolina. (First Am. Compl. ¶ 8.) Article VIII of Futures' Bylaws addresses both advancement and indemnification for its directors and officers. (Aff. Denis Brosnan Ex. A, 15–16 [herein "Bylaws"], ECF No. 71.)[1]

6. Cramer is the founder and CEO of Futures. He married Brosnan's daughter Aimee Brosnan ("Aimee") in 2008. (Counterclms. ¶¶ 7–11.) They separated in 2020. (Aff. Cramer Supp. Pl. Futures' Opp. Def. Brosnan's Mot. Part. S.J. ¶ 2 ["Cramer's Aff."], ECF No. 74; Counterclms. ¶ 52.)

---

[1] Before changing its name in 2007, Futures was formerly named "The Talent Group, Inc." (Counterclms. ¶ 10.) Its Bylaws still reflect that name.

7. Over the years, Brosnan has loaned a considerable amount of money to Futures. (*See* Counterclms. ¶ 60.) In addition, Brosnan served as Chair of Futures' Board of Directors until his removal. (First Am. Compl. ¶ 8.)

8. The parties' disagreements continued after Brosnan was removed from the Board. Futures and Cramer brought suit in May 2021. (*See* Compl., ECF No. 3.)

9. On 17 November 2021, Brosnan, through counsel, sent Futures a letter demanding advancement of his legal expenses with respect to this action. The letter included an undertaking promising to reimburse Futures if the Court determined that Brosnan was not entitled to indemnification. (*See* Aff. Denis Brosnan Ex. B, ECF No. 71.) Brosnan alleges that Futures did not respond, and the record reveals no response. (Counterclms. ¶ 170.)

10. Brosnan subsequently filed his Answer to First Amended Complaint and Counterclaims, asserting twelve causes of action (six in the alternative), (ECF No. 30). He then filed this Motion on 17 May 2022, (ECF No. 68). The Motion seeks partial summary judgment as to Brosnan's Tenth Claim for Relief (Breach of Bylaws—Advancement). The Motion has been fully briefed, and a hearing on the matter was held on 30 August 2022. (*See* ECF No. 78.) The Motion is now ripe for disposition.

## II. LEGAL STANDARD

11. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the movant] is entitled

to a judgment as a matter of law.' " *Da Silva v. WakeMed*, 375 N.C. 1, 10 (2020) (quoting N.C.G.S. § 1A-1, R. 56(c)).

12. For affirmative summary judgment on a party's own claim, the burden is heightened. The moving party "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985); *accord Kidd v. Early*, 289 N.C. 343, 370 (1976). Consequently, "rarely is it proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984).

13. Here, the facts with respect to Brosnan's Motion are not in dispute. Instead, the parties wrestle over the meaning of the relevant provisions of Futures' Bylaws. Brosnan asks this Court to order Futures to specifically perform the contractual commitment in its Bylaws to advance Brosnan's expenses for this litigation. In response, Futures contends that the Bylaws do not entitle Brosnan to advancement.

## III. ANALYSIS

A. Choice-of-Law

14. As a preliminary matter, the Court must determine which state's law applies with respect to interpreting the Bylaws of this Delaware corporation. North Carolina subscribes to the internal affairs doctrine. *See* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 32.05, at 32-7 (7th ed. 2021) ("the choice-of-law question will be decided with reference to the 'internal affairs doctrine'

"); *Velleros, Inc. v. Patterson*, 2015 NCBC LEXIS 16, at \*\*21 (N.C. Super. Ct. Feb. 23, 2015) ("North Carolina has adopted the 'internal affairs doctrine' "). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008).

15. Accordingly, North Carolina courts apply the substantive law of the incorporating state when deciding matters of internal governance. *See id.* Internal governance includes "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Islet Scis., Inc. v. Brighthaven Ventures*, LLC, 2017 NCBC LEXIS 4, at \*11 (N.C. Super. Ct. Jan. 12, 2017). Because advancement is an internal governance matter and Futures is a Delaware corporation, this Court will apply the substantive law of Delaware to the issue of advancement. *Cf. RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, at \*\*66 (N.C. Super. Ct. Feb. 18, 2016) (using the internal affairs doctrine to apply Florida law when deciding if a Florida corporation's bylaws require indemnification); *Spira Footwear v. Lebow*, 2008 U.S. Dist. LEXIS 129918, at \*29–35 (W.D. Tex. Aug. 29, 2008) (using the internal affairs doctrine to order a Texas corporation to advance legal fees).

B. Futures' Bylaws

16. Article VIII of Futures' Bylaws speaks to a director's rights to indemnification and advancement.[2] The indemnification section, in relevant part reads:

> 1. Indemnification for Expenses and Liabilities. Any person who at any time ***serves or has served (i) as a director***, officer, employee or agent of the Corporation, . . ., shall have a right to be indemnified by the Corporation to the fullest extent from time to time permitted by law against Liability and Expenses in any Proceeding (including without limitation a Proceeding brought by or on behalf of the Corporation itself) arising out of his or her status as such or activities in any of the foregoing capacities.

(Bylaws, Article VIII, ¶ 1 (emphasis added).)

17. The advancement section uses mandatory language. It provides:

> 2. Advance Payment of Expenses. The Corporation shall (upon receipt of an undertaking by or on behalf of the director, officer, employee or agent involved to repay the Expenses described herein unless it shall ultimately be determined that he or she is entitled to be indemnified by the Corporation against such Expenses) pay Expenses incurred by such director, officer, employee or agent in defending a Proceeding or appearing as a witness at a time when he or she has not been named as a defendant or a respondent with respect thereto in advance of the final disposition of such Proceeding.

---

[2] Indemnification and advancement are tools that companies use to address litigation risk for would-be directors and officers. Without these tools, talented individuals might forgo the opportunity to serve because of the heightened risk of litigation associated with being a company official. Indemnification ensures that directors and officers do not personally bear the litigation risk for actions they take in good faith on behalf of the business. In addition, while litigation is pending, and before decisions regarding indemnification can be made, a company may agree to advance the cost of attorney's fees and other litigation expenses upon receipt of the official's promise to repay the funds should it be determined that indemnification is not appropriate. Accordingly, advancement and indemnification are used to attract talented leaders to become company officials by at least initially shouldering the risk of liability and the cost of litigation. *See generally* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 18.01 (7th ed. 2021).

(Bylaws, Article VIII, ¶ 2.)

18. The Bylaws define "Expenses" broadly, encompassing "expenses of every kind, including counsel fees." Likewise, "Proceeding" is defined broadly to mean "any threatened, pending or completed action, suit, or proceeding and any appeal therein . . . whether civil, criminal, administrative, investigative or arbitrative and whether formal or informal." (Bylaws, Article VIII, ¶ 4.)

19. Brosnan contends that he "is entitled to an Order requiring Futures to specifically perform under the Bylaws and advance payment of his litigation expenses associated with defending the claims brought by Futures, including expenses already incurred and expenses to be incurred through the duration of the litigation." (Counterclms. ¶ 171.) In support of his request, Brosnan asserts that (1) the Bylaws constitute a binding and enforceable contract requiring advancement for current and former directors, (2) Futures sued Brosnan for actions he took as a director of Futures, and (3) Brosnan has provided the required undertaking. (Counterclms. ¶¶ 165–71.)

20. Futures responds by arguing that (1) this Court does not have jurisdiction to decide the issue of advancement; (2) the Bylaws do not require advancement to Brosnan, as a former director; and (3) the Court should not provide relief because Brosnan has committed wrongs against the company. (Futures' Opp. Br. 19 fn.10, 20, 23–24, ECF No. 73.)

### 1. Jurisdiction

21. Starting with the jurisdictional issue, Futures argues that this Court does not have subject matter jurisdiction because, by Delaware statute, "[t]he Court of Chancery is . . . vested with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section or under any bylaw[.]" 8 Del. C. § 145(k). Futures argues, therefore, that the Delaware Chancery Court has exclusive jurisdiction over Brosnan's claim. (Futures' Opp. Br. 19 fn.10.)

22. But Futures misconstrues the statute. The Chancery Court has itself observed that the statute merely "allocat[es] jurisdiction among the Delaware courts. The state is *not* making a claim against the world that no court outside of Delaware can exercise jurisdiction over that type of case. Nor, as a matter of power within our federal republic, could the State of Delaware arrogate that authority to itself." *In re Kloiber*, 98 A.3d 924, 939 (Del. Ch. 2014) (emphasis in original) (reversed on other grounds). *See also Merinoff v. Empire Merchs.*, 2017 Del. Ch. LEXIS 23, at *7 (Del. Ch. Feb. 2, 2017) ("the [Delaware General Corporation Law] does not require a proceeding for advancement to be brought in this court"). Indeed, actions for advancement and indemnification have been brought and adjudicated in courts other than the Delaware Chancery Court. *See, e.g., Island Two LLC v. Island One, Inc.*, 2015 U.S. Dist. LEXIS 28507, at *16–22 (S.D.N.Y. Mar. 9, 2015); *Abakan, Inc. v. Uptick Capital, LLC*, 943 F. Supp. 2d 410, 417 (S.D.N.Y. 2013); *Souder v. Rite Aid Corp.*, 911 A.2d 506, at **512–13 (Pa. Super. Ct. Oct. 13, 2006).

23.     Therefore, while the Court of Chancery would be the proper court in which to pursue this claim if the case were pending in Delaware, it is pending in North Carolina, and the Court determines that in this State, it has jurisdiction over Brosnan's claim for advancement.[3]

2. Language of Futures' Bylaws

24.     Futures next argues that the Bylaws provide "that only current directors are entitled to the privilege of advancement; not former directors, such as [Brosnan]." (Futures' Opp. Br. 1 (emphasis omitted).)  To make this argument, Futures contrasts the language in the indemnification section of the Bylaws, affording indemnification rights to a director "who at any time serves or has served[,]" with the language in the advancement section, which does not expressly state that the rights extend to a former director who has "served."  (*See* Bylaws, Article VIII, ¶¶ 1–2.)

25.     Relying on general principles of contract interpretation, Futures argues that the drafters' intentional use of the past tense "served" in the indemnification section and their omission of a similar past tense verb in the advancement section

---

[3] Futures cites to *Wheeler v. Wheeler*, 2018 NCBC LEXIS 156 (N.C. Super Ct. Nov. 15, 2018) in support of its argument that only the Delaware Chancery Court can decide disputes regarding advancement when Delaware corporations are involved.  However, *Wheeler* involved a North Carolina corporation, and the court applied North Carolina law to hold that the defendant did not make the requisite showing of immediate, pressing, and irreparable harm that is required for the issuance of a preliminary mandatory injunction.  In reaching its decision, the Court observed that the law of advancements in North Carolina was not yet well-developed and that in Delaware, unlike North Carolina, a statute gives the Court of Chancery exclusive jurisdiction to hear and summarily decide actions for advancement.  *Id.* at **43.  The *Wheeler* Court did not hold that only the Delaware Chancery Court can decide disputes involving advancement in the North Carolina courts, even when the dispute involves a Delaware corporation.

can only mean that advancement rights are limited to current directors and not former ones. (Futures' Opp. Br. 20–24.)

26. Furthermore, Futures relies on *Charney v. Am. Apparel, Inc.*, 2015 Del. Ch. LEXIS 238 (Del. Ch. Sept. 11, 2015) to support its conclusion that Brosnan, as a former director, has no right to advancement. In *Charney*, the Chancery Court held that the defendant, a former Chairman and Chief Executive Officer of American Apparel, was not entitled to advancement for violation of a Nomination, Standstill and Support Agreement ("Standstill Agreement") because his actions were not "related to the fact" that Charney is or was a director or officer of the company. *See Charney*, 2015 Del. Ch. LEXIS 238, at *47–58.

27. Additionally, the *Charney* court held that the company's charter mandated advancement only for current directors and officers, and Charney was neither when he violated the Standstill Agreement. The court observed that generally "[w]hen the words 'officers' and 'directors' are not qualified by the adjective 'former' (or a similar adjective), Delaware courts have interpreted those words to refer to current officers and current directors." *Id.* at *19. Futures argues that "[l]ike in *Charney*, the absence of any language extending the right to advancement to *former* directors precludes [Brosnan] from obtaining an advancement for his legal fees and expenses." (Futures' Opp. Br. 22.)

28. However, the holding in *Charney* is not controlling in the present case. Rather, 8 Delaware Code § 145(j) controls. Section 145(j) reads:

> The indemnification and advancement of expenses provided by, or granted pursuant to, this section shall, ***unless otherwise provided***

when authorized or ratified, continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

Del. C. § 145(j) (emphasis added).

29. By its plain language, Section 145(j) creates a default "continuation rule" establishing, absent express language to the contrary in the Bylaws, that a director's right to advancement for legal expenses to defend a Proceeding "arising out of his or her status as [a director,]" Bylaws, Article VIII, ¶ 1, continues even after his or her status as a director ends. *See Marino v. Patriot Rail Co., LLC*, 131 A.3d 325, 342 (Del. Ch. 2016) ("those rights presumptively continue to provide coverage for actions the individuals took during their period of service even after the individuals have ceased to serve").

30. Put differently, "if a person serves as a director and makes a decision, and if that person would be entitled to receive advancements in litigation over that decision while serving as a director, then that person's rights to advancements 'shall . . . continue' after that person 'has ceased to be a director.' " *Marino*, 131 A.3d at 338; *see also* 1 David A. Drexler et al., *Delaware Corporation Law and Practice* § 16.04, at 16–23 (Supp. 2012) ("under the current default rule, the right to advancement vests at the time of the act or omission giving rise to such right").

31. In addition, parties cannot opt-out of this default rule by implication or omission; it must be done expressly. *See Marino*, 131 A.3d at 343 fn.19 (the "right to indemnification or advancement under a corporate bylaw vests at the occurrence of

the act or omission that is the subject of the . . . action, suit or proceeding unless the bylaw expressly provides otherwise").

32. Here, Futures relies on an inference drawn from the difference between the wording of the Bylaws' advancement provision and its indemnification provision to argue that Brosnan's advancement rights did not continue after his service on the Board ended. But faced with Section 145(j), an inference is not enough. Without express language in the Bylaws deviating from the default rule, Delaware's presumption that advancement rights continue after a director's service ends applies to Brosnan's claim. *See id.*

33. Accordingly, because no express provision rebutting the default rule exists in Futures' Bylaws, Brosnan's right to advancement vested at the time of his actions as a director and was not lost when his service on the Board ended.

### 3. Brosnan's Alleged Wrongdoing

34. Lastly, Futures argues that Brosnan is not entitled to specific performance of the advancement provision because he is guilty of wrongs against the company. (Futures' Opp. Br. 23–24.)

35. This time Futures puts the proverbial cart before the horse. Brosnan has not admitted to wrongdoing, and at this stage, no fact-finder has determined that he is responsible for it.[4] The Delaware Chancery Court has observed that it has often been required to uphold the advancement rights of corporate officials accused of

---

[4] Futures' reluctance to honor its bylaws is not unusual. As this Court has observed, "[f]ew companies, having sued an official for bad behavior, are willing to fund both sides of the lawsuit, even when they've contracted to do so." *Vanguard Pai Lung, LLC v. Moody*, 2020 NCBC LEXIS 92, *7 (N.C. Super. Ct. Aug. 4, 2020).

serious misconduct, because to do otherwise would undermine the public policy served by Section 145. *See, e.g., Reddy v. Elec. Data Sys. Corp.*, 2002 Del. Ch. LEXIS 69, at \*15–16 (Del. Ch. June 18, 2002) ("[I]t is highly problematic to make the advancement right of such officials dependent on the motivation ascribed to their conduct by the suing parties. To do so would be to largely vitiate the protections afforded by [Section] 145 and contractual advancement rights."); *Imbert v. LCM Interest Holding LLC*, 2013 Del. Ch. LEXIS 126, at \*15–19 (Del. Ch. Feb. 7, 2013) (enforcing mandatory advancement provision where complaint alleged that officer breach his fiduciary duties to withdraw millions of dollars from the company); *Zaman v. Amedeo Holdings, Inc.*, 2008 Del. Ch. LEXIS 60, at \*134 (Del. Ch. May 23, 2008) (upholding advancement rights where former directors were alleged to have, among other things, siphoned funds, used credit cards improperly, and entered sweetheart contracts to benefit themselves).

36. There is no wiggle room here. Futures' Bylaws mandate advancement:

> "The Corporation *shall* (upon receipt of an undertaking by or on behalf of the director . . . involved to repay the Expenses described herein unless it shall ultimately be determined that he or she is entitled to be indemnified by the Corporation against such Expenses) *pay Expenses* incurred by such director . . . in defending a Proceeding . . . in advance of the final disposition of such Proceeding."

(Bylaws, Article VIII, ¶ 2 (emphasis added).) "When advancement is mandatory, the company carries the ultimate burden of proving that advancement is not required. This Court construes advancement provisions broadly to effectuate Delaware's policy of providing temporary relief from substantial expenses." *Kerbs v. Bioness, Inc.*, 2022

Del. Ch. LEXIS 193, at *6 (Del. Ch. Aug. 15, 2022) (cleaned up); *accord Krauss v. 180 Life Scis. Corp.*, 2022 Del. Ch. LEXIS 54, at *8 (Del. Ch. Mar. 7, 2022).

37. In the present case, Futures has not carried that ultimate burden. The Court finds that Brosnan, having provided the required undertaking, is entitled to advancement.

## IV. CONCLUSION

38. For these reasons, Brosnan's Motion for Partial Summary Judgment is **GRANTED**. Futures is **ORDERED** to advance Brosnan's Expenses in this matter in accordance with Article VIII, ¶ 2 of its Bylaws.

39. No later than 3 February 2023 counsel shall meet and confer in good faith to determine the amount of advanceable expenses incurred by Brosnan to date and to establish a procedure for ongoing advancement. Counsel is directed to avoid granular disputes, which may be addressed as necessary at the indemnification stage. *See Thompson v. ORIX USA Corp.*, 2016 Del. Ch. LEXIS 84, at *14 (Del. Ch. June 3, 2016).

40. On or before 8 February 2023, the parties shall report to the Court, via email to the Court's clerk, regarding their status.


IT IS SO ORDERED, this the 19th day of January, 2023.


/s/ Julianna Theall Earp
_____
Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases